## Case No. 16,544.

### UNITED STATES v. The TULIP.

[See Case No. 14,234.]

---

## Case No. 16,545.

### UNITED STATES v. TULLY et al.

[1 Gall. 247.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1812.

PIRACY — RUNNING AWAY WITH VESSEL — INTENT.

To constitute the offence of piracy within the act of April 30, 1790, c. 9 [1 Stat. 112], by "piratically and feloniously" running away with a vessel, personal force and violence is not necessary. The piratically and feloniously running away with a vessel, within the act, is the running away with a vessel, with the wrongful and fraudulent intent thereby to convert the same to the taker's own use, and to make the same his own property, against the will of the owner. The intent must be animo furandi.[2]

[Cited in The Ambrose Light, 25 Fed. 424, 426.]

The prisoners [Samuel] Tully and [John] Dalton were apprehended at the Island of St. Lucia, by authority of the government there, on suspicion of having run away with a vessel of the United States, on board of which the former was mate, and the latter a mari-

---

[1] [Reported by John A. Hayward, Esq., and George C. Hazelton, Esq.]

[1] [Reported by John Gallison, Esq.]

[2] As to what constitutes the offence of piracy against the United States, see U. S. v. Palmer, 3 Wheat. [16 U. S.] 610; U. S. v. Klintock, 5 Wheat. [18 U. S.] 144; U. S. v. Furlong, Id. 134. See 1 Kent, Comm. 183–191, where the authorities are cited and commented on.

ner. Being sent to the United States for trial, they were brought first into Martha's Vineyard, within the district of Massachusetts. On the 29th of October, 1812, they were arraigned, and pleaded, "not guilty", to the following indictment. Peter O. Thacher, and James T. Austin, Esq'rs. had before been assigned to them as counsel by the court, and a list of the jurors, &c. had been furnished agreeably to the law: "United States of America, Massachusetts District—ss.: At a circuit court of the United States, for the First circuit, begun and held at Boston, within and for the district of Massachusetts, on the 15th day of October, in the year of our Lord eighteen hundred and twelve. The jurors for the United States, within and for the district and circuit aforesaid, upon their oath, present, that Samuel Tully, late of the city of Philadelphia, in the district of Pennsylvania, mariner, and John Dalton, late also of the same city of Philadelphia, mariner, on the 10th day of January now last past, with force and arms upon the high seas, near a place called the Isle of May, one of the Cape Verd Islands, and out of the jurisdiction of any particular state, they, the said Samuel Tully and John Dalton, being then and there mariners of a certain vessel of the United States, being a schooner called the George Washington, then and there belonging and appertaining to a certain citizen or citizens of the United States, to the jurors aforesaid as yet unknown; of which said vessel, one Uriah Phillips Levy, a citizen of the said United States, was then and there master and commander, piratically and feloniously did then and there run away with the aforesaid vessel called the George Washington, and with certain goods and merchandize, that is to say, fourteen quarter casks of Teneriffe wine, and two thousand Spanish milled dollars, being altogether of the value of five thousand dollars, which were then and there on board of the vessel aforesaid; they, the said Samuel Tully and John Dalton, during all the time aforesaid, being then and there mariners of the said vessel, and in and on board of the same on the high seas as aforesaid, against the peace and dignity of the United States, and the form of the statute in such case made and provided. And the jurors aforesaid, upon their oath aforesaid, do further present, that the said Samuel Tully and John Dalton, on the said 10th day of January now last past, then being mariners of, in, and on board the said schooner or vessel called the George Washington, belonging and appertaining to certain citizens of the United States, (to the jurors aforesaid as yet unknown,) with force and arms upon the high seas aforesaid, and out of the jurisdiction of any particular state, near a place called the Isle of May, one of the Cape Verd Islands, in and on board the said schooner or vessel called the George Washington, whereof the said Uriah Phillips Levy, a citizen of the said United States, then and there was master as afore-

said; the same schooner or vessel, and the tackle and apparel thereof, of the value of five thousand dollars, of lawful money of the United States, and certain goods and merchandize, to wit, fourteen quarter casks of Teneriffe wine, of the value of one thousand dollars of like lawful money, and two thousand Spanish milled dollars, of the value of two thousand dollars of like lawful money, of the goods and chattels of certain citizens of the United States, (to the jurors aforesaid as yet unknown,) then and there being in the said schooner or vessel, under the care and custody, and in the possession of the said Uriah Phillips Levy, as master of the said schooner or vessel, then and there upon the high seas aforesaid, near the said Isle of May, and out of the jurisdiction of any particular state, with force and arms as aforesaid, from the care, custody and possession of the said Uriah Phillips Levy, piratically and feloniously did steal, take and run away with; they, (the said Samuel Tully and John Dalton), then and there being mariners of the said vessel, and in and on board the said vessel, upon the high seas as aforesaid—against the peace and dignity of the said United States, and the form of the statute in such case made and provided. And the jurors aforesaid, upon their oath aforesaid, do further present, that after the commission of the said offences, to wit, on the 15th of July, now last past, the said Samuel and John, the offenders aforesaid, were first brought into the said Massachusetts district, and that the said Massachusetts district is the district into which the said offenders were as aforesaid first brought. A true bill. Humphrey Devereux, Foreman. George Blake, United States Attorney for Massachusetts District."

On this indictment the prisoners were tried jointly, and the jury, having returned a verdict of "guilty" against both, their counsel filed the following motion: "And now, after verdict and before judgment, the said Samuel and John, by their counsel assigned to them by the court, move the court here for a new trial of the issues joined on the said indictment, for the causes following, viz.: (1) Because the honorable court, in committing the cause to the jury, who tried the issue, misdirected them in a material point of law; in this, that they directed the jury, if they believed from the evidence in the case, that the defendants feloniously ran away with the vessel and merchandize mentioned in the indictment, it constituted the crime of piracy within the meaning of the statute, on which the indictment is founded. (2) Because the verdict of the jury was rendered against the weight of evidence, they having found the said defendants guilty of piratically and feloniously running away with the vessel and merchandize in the indictment mentioned, from the care, custody and possession of Uriah Phillips Levy, the master thereof, though no evidence was offered to them to show that

any force or violence were exercised on the said Levy, or that he or any other person were thereby put in fear; but the evidence on the part of the government proved the contrary. Peter O. Thacher, James T. Austin."

The court, after hearing the arguments of the respective counsel[3] and taking time to consider the objections raised, at a subsequent day in the term, delivered seriatim the following opinions, from which also the principal facts of the case will appear:

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. In order to ascertain the nature of the objections now urged to the court, it will be necessary to state summarily the evidence offered to the jury. On the 9th of January, 1812, the schooner George Washington, mentioned in the indictment, lay in an open roadstead near the Isle of May, moored with two anchors. There were on board $2,500 in Spanish dollars, and fourteen casks of Teneriffe wine. Samuel Tully was mate, and John Dalton was a mariner belonging to the schooner. It appeared from the testimony, that in the afternoon, the captain being on shore, the cables of both anchors were cut off on the windlass. That the mate and Dalton were on board at the time, and gave no explanation. That the vessel was got under weigh by order of the mate; and two of the seamen, having a suspicion of the nature of the intended transaction, refused to go out with the vessel, and were suffered to quit her in a boat. That immediately afterwards, the mate directed the schooner to sea, four persons only being on board, and the next day steered a course apparently for the West Indies. At the time of departure the weather was mild and moderate, and there was no evidence offered to show any pretence for the departure. About eighteen or twenty days after the departure, one of the seamen on board was, about midnight, killed and thrown overboard by the mate and Dalton. The next day land was discovered, which proved to be St. Lucia in the West Indies. The schooner was then scuttled by the mate and Dalton, by boring holes in her bottom with an auger, and was then deserted and left in a sinking condition. The mate and Dalton, and the cook, (who was a principal witness at the trial) took to the boat, the money, and some wine and bread having been previously put into it. They stood out to sea that night, and in the afternoon of the next day they arrived at St. Lucia. The mate and Dalton agreed that a fictitious story should be told, that the schooner struck on a wreck, and foundered at sea; and the cook was directed to tell the same story. The mate divided the money, giving Dalton a large bag of it, the cook a small bag, and keeping a third large bag for himself. The fictitious story was told on landing, and finally, in about a fortnight or three weeks, the cook, from distress of mind and contrition at the offence, voluntarily disclosed the whole transaction. The testimony of the cook was, in all the circumstances in which from the nature of the case it was capable of corroboration, fully corroborated by the testimony of the captain. I omit many interesting incidents and striking facts, because I wish to present only an outline of the case.

At the trial, the court directed the jury to the following effect: That, at the common law, the offence of piracy consisted in committing those acts of robbery and depredation upon the high seas, which, if committed on land, would have amounted to felony there. 2 East, P. C. 796; 4 Bl. Comm. 72. That it was not necessary by the common law, that the offence should be committed with all the facts necessary to constitute the technical crime of robbery. That robbery could be committed only by force and violence to the person, or by putting in fear. 2 East, P. C. 708. But any felonious taking or carrying away of a ship, and the property on board thereof, which, if done on land, would have amounted to felony, if done at sea, although there were no violence used to the person of the owner or master, and no putting in fear, would, in point of law, be piracy. That the present was however a statute offence, to be decided by the attentive consideration of the terms, by which it was created, and not otherwise connected with the common law, than as the latter might illustrate or fix the true construction. The statute declares, that "if any captain or mariner of any ship or other vessel shall piratically and feloniously run away with such ship or vessel, or any goods or merchandize to the value of fifty dollars, &c. every such offender shall be deemed, taken and adjudged to be a pirate and a felon, and being thereof convicted, shall suffer death." That the only facts necessary to constitute the crime were those prescribed in the statute, viz. that the vessel should be run away with by a captain or mariner of the vessel, and that it should be done piratically and feloniously. That the statute does not in terms require, that there should be any personal violence or putting in fear; and if the captain and crew were all to confederate and run away with the ship, with a piratical and felonious intent, there could be no doubt that it would be within the statute; yet in such a case there could be no pretence of personal violence or terror. The same might be stated as to a vessel run away with by one of the crew, where no other person was on board. That the terms "piratically and feloniously" did not imply necessarily personal force or violence. That if a theft were committed secretly or without violence, it might amount to felony, and if so, then if

---

[3] On the argument, Blake cited Stubbs, 590.

committed on the seas, it might amount to piracy. That the "piratically and feloniously running away with a ship," within the statute, was the running away with the ship, with the wrongful and fraudulent intent thereby to convert the same to the taker's own use, and to make the same his own property, against the will of the owner. The intent must be that wicked and depraved intent, that animus furandi, which the law deems felonious. It must be a fraudulent and unlawful conversion of the property for the sake of gain, with the intent to despoil the owner thereof, against his will. In this view of the subject, the terms "piratically and feloniously" seemed used in the statute almost as equivalent to each other. And finally, the court directed the jury, that if they were satisfied from the evidence, that the prisoners at the bar did run away with the vessel, with the felonious intent thereby fraudulently and wrongfuly to convert the same to their own use, it constituted the crime contemplated in the statute.

With this opinion the counsel for the prisoners were dissatisfied, and they have moved for a new trial, upon exceptions filed before us. I have rather stated at large our directions at the trial, because, although the exceptions may be virtually included in our opinion, yet the whole should be connected together, in order to form a deliberate judgment of its legal propriety. After much reflection on the subject, and the examination of authorities, I remain of the same opinion that I expressed at the trial. If I felt any doubt, I should be anxious to have the opinion of another tribunal; but having none, I must give my voice for over-ruling the exceptions.

DAVIS, District Judge. A pirate is one, says Hawkins, who, to enrich himself, either by surprise or force, sets upon merchants or other traders, by sea, to spoil them of their goods: this description, as is observed by a respectable writer of our own country, is applicable merely to piracy by the law of nations. Piracy, by the common law, consists in committing those acts of robbery and depredation upon the high seas, which, if committed on shore, would amount to felony there. The description of the offence in the first part of the 8th section of our statute, is analogous to the common law description; but the statute proceeds, in correspondence with the statute of 11 and 12 Wm. III., to make certain other acts piracy, which would not be so at common law; and among the rest, an atrocious breach of trust by any captain or mariner of any ship or vessel, in running away with such ship or vessel, or any goods or merchandize to the value of fifty dollars. To constitute this offence, the act must be done, as the statute expresses it, piratically and feloniously. Unlawful depredation, says a respectable writer of the civil law, is of the

essence of piracy; and this I apprehend is true, relative to piracy thus created by statute, as well as to piracies by common law. The animus depredandi, as it is expressed by Molloy, is to be determined by the jury, from facts and circumstances given in evidence, and is comprehended in the term "feloniously," which refers to the mind, will or intention. If the jury find the act of running away with the ship or vessel and goods to be done feloniously, they find it to be done without any justification or excuse; they find it to be done wilfully and fraudulently, animo furandi lucri causa; and having been committed with the other qualities and incidents mentioned in the statute, i. e. at sea by persons bearing the relation to the ship of captain or mariners, and the property plundered amounting to fifty dollars—such felonious act is, in contemplation of the statute, piratical. Thus the jury were instructed, and after the serious deliberation which the nature and magnitude of the case necessarily impose, I do not think the direction erroneous.

In regard to the second objection, if force were necessary to be proved in order to constitute piracy, there was sufficient evidence in the case of a forcible taking of the property in question; nor can it be contended, I think, from the evidence, that no person was put in fear. But it is said that no evidence was offered to show that any force or violence were exercised on Levy, the master, in whose care, custody and possession the vessel and goods were alleged to be, or that he was put in fear. This objection is grounded on an analogy to robbery on land; an analogy too strictly pursued in the argument on this head. Even at common law, piracy might be committed without the characteristics which this objection considers as essential. If a ship shall ride at anchor, says Molloy, and the mariners shall be part in their ship's boat, and the rest on shore, and none shall be in the ship; yet if a pirate shall attack and rob her, the same is piracy. And on this statute there can be no question, as appears to me, that actual force on the master, or other person in possession, is not necessary to constitute the offence. The statute had in view the prevention of atrocious violation of trust, by persons standing in particular relations to the ship. Officers and mariners may combine feloniously to run away with the ship and cargo without any person being put in fear, in the sense considered in the objection, and yet it would be clearly a piratical act, within the true intent and meaning of the statute.

It is not necessary now to consider whether a new trial could properly be directed by the court, if the objections, or either of them, were well founded. Being persuaded that the jury were not misdirected in matter of law, and that the indictment is legally maintainable without proof of actual force or violence on the master or others, or

that they were put in fear, I am of opinion that the motion be over-ruled.

Motion over-ruled.[4]

---

4 At a subsequent day the sentence of death was pronounced by STORY, Circuit Justice. Tully was afterwards executed; but Dalton, appearing penitent, and it being supposed that he was in a great degree under the influence and authority of the mate, at the intercession of several gentlemen, was, after frequent reprieves, pardoned by the president of the United States.

